**Slip Op. 23-54**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NUCOR CORPORATION, | |
| Plaintiff, | |
| and | |
| STEEL DYNAMICS, INC., | |
| Plaintiff-Intervenor, | |
| v. | Before: Jennifer Choe-Groves, Judge |
| UNITED STATES, | Court No. 22-00050 |
| Defendant, | |
| and | |
| HYUNDAI STEEL COMPANY and GOVERNMENT OF THE REPUBLIC OF KOREA, | |
| Defendant-Intervenors. | |

**OPINION AND ORDER**

[Sustaining the final results of the administrative review by the U.S. Department of Commerce in the countervailing duty investigation of certain corrosion-resistant steel products from the Republic of Korea.]

Dated: April 19, 2023

Adam M. Teslik, Wiley Rein, LLP, of Washington, D.C., argued for Plaintiff Nucor Corporation. With him on the brief were Alan H. Price, Christopher B.

Weld, and Tessa V. Capeloto.

Roger B. Schagrin, Christopher T. Cloutier, Elizabeth J. Drake, Luke A. Meisner, Jeffrey D. Gerrish, William A. Fennell, Nicholas J. Birch, Benjamin J. Bay, Kelsey M. Rule, Michelle R. Avrutin, and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., for Plaintiff-Intervenor Steel Dynamics, Inc.

Kelly A. Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Claude Burke, Assistant Director, and Elizabeth Speck, Senior Trial Counsel, of Washington, D.C. Of Counsel on the brief was Ayat Mujais, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, D.C.

Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Edward J. Thomas, III, Jordan L. Fleischer, and Nicholas C. Duffey, Morris, Manning & Martin, LLP, of Washington, D.C., for Defendant-Intervenor Hyundai Steel Company.

Daniel M. Witkowski, Akin Gump Strauss Hauer & Feld LLP, of Washington, D.C., argued for Defendant-Intervenor Government of the Republic of Korea. With him on the brief were Yujin K. McNamara, Sarah S. Sprinkle, Devin S. Sikes, Sydney L. Stringer, and Sung Un K. Kim.

    Choe-Groves, Judge: Plaintiff Nucor Corporation ("Nucor") challenges the U.S. Department of Commerce's ("Commerce") Certain Corrosion-Resistant Steel Products From the Republic of Korea ("Korea"): Final Results and Partial Recission of Countervailing Duty Administrative Review; 2019. Compl., ECF No. 10; Certain Corrosion-Resistant Steel Products From the Republic of Korea ("Final Results"), 87 Fed. Reg. 2759 (Dep't of Commerce Jan. 19, 2022) (final results and partial recission of countervailing duty administrative review; 2019); see also

Issues and Decision Memorandum for the Final Results and Partial Recission of the 2019 Administrative Review of the Countervailing Duty Order on Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Final IDM"), PR 213.[1]

Nucor challenges Commerce's determination that the Government of Korea's provision of electricity for less than adequate remuneration did not confer a benefit. Pl.'s R. 56.2 Mot. J. Agency R. and Mem. Supp. ("Pl.'s Br."), ECF Nos. 34, 35; Pl.'s Reply Br. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Reply Br."), ECF Nos. 45, 46. Defendant United States ("Defendant"), Defendant-Intervenor Hyundai Steel Company ("Hyundai Steel"), and the Government of the Republic of Korea ("Government of Korea") argue that the Court should sustain the Final Results. Def.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF No. 38; Def.-Interv.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R., ECF Nos. 36, 37; Def.-Interv.'s Corrected Mem. Opp'n Pl.'s R. 56.2 Mot. J. Agency R., ECF No. 42-2, 43-2. For the reasons discussed below, the Court sustains Commerce's Final Results.

---

[1] Citations to the administrative record reflect the public administrative record ("PR") document numbers. ECF No. 48.

## BACKGROUND

Commerce published its countervailing duty order in the Federal Register. <u>Certain Corrosion-Resistant Steel Products from India, Italy, Republic of Korea and the People's Republic of China</u>, 81 Fed. Reg. 48,387 (Dep't of Commerce July 25, 2016) (countervailing duty order). Commerce initiated an administrative review of the countervailing duty order on certain corrosion-resistant steel products from Korea for the period of review of January 1, 2019, to December 31, 2019. <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 85 Fed. Reg. 54,983, 54,990–91 (Dep't of Commerce Sept. 3, 2020). Petitioners U.S. Steel Corporation ("U.S. Steel") and Nucor filed new subsidy allegations. Letter from Cassidy Levy Kent (USA) LLP and Wiley Rein LLP to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea: Petitioners' New Subsidy Allegation (Jan. 4, 2021), PR 96. Nucor and U.S. Steel alleged that the Government of Korea provided countervailable subsidies to the steel industry in the form of electricity for less than adequate remuneration. <u>See</u> <u>id.</u> Commerce initiated a review of the alleged subsidy. Memorandum from Dennis McClure to Irene Darzenta Tzafolias, re: Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea: New Subsidy Allegation (Feb. 1, 2021), PR 109. Commerce issued supplemental questionnaires regarding the subsidy allegation to the Government of Korea and to

mandatory respondents Hyundai Steel and KG Dongbu Steel Co., Ltd. ("KG Dongbu") (collectively, "mandatory respondents"), each of whom provided responses.  Letter from Yoon & Yang LLC to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Government of Korea's New Subsidy Allegations Questionnaire Response (Feb. 24, 2021) ("Government of Korea's NSAQR"), PR 130; Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Hyundai Steel's New Subsidy Allegations Questionnaire Response (Feb. 24, 2021) ("Hyundai Steel's NSAQR"), PR 129; Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's New Subsidy Allegations Questionnaire Response (Feb. 10, 2021) ("KG Dongbu's NSAQR"), PR 123.

Commerce issued the Preliminary Results and the Final Results of the administrative review.  Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Preliminary Results"), 86 Fed. Reg. 37,740 (Dep't of Commerce July 16, 2021) (preliminary results of countervailing duty administrative review, 2019); Preliminary Decision Memorandum accompanying Certain Corrosion-Resistant Steel Products From the Republic of Korea 86 Fed. Reg. 37,740 (Dep't Commerce July 16, 2021 (prelim. results of countervailing

duty admin. rev., 2019) ("Prelim. DM"), PR 173; Final Results, 87 Fed. Reg. 2759; Final IDM. In the Final IDM, Commerce explained that it applied a "Tier 3 analysis" pursuant to 19 C.F.R. § 351.511(a)(2)(iii) to assess whether the electricity prices charged by the Korea Electric Power Corporation ("KEPCO") were consistent with market principles by evaluating whether the electricity prices allowed for the recovery of costs plus a rate of recovery or profit. Final IDM at 15. Using this methodology, Commerce determined that some electricity prices were in line with market principles and some were not, with the difference between the price paid and the benchmark being the benefit conferred. Id. Commerce determined that no measurable benefit was conferred in this administrative review. Id.

Commerce calculated final subsidy rates of 0.47% or de minimis for Hyundai Steel and 10.51% for KG Dongbu. Final Results, 87 Fed. Reg. at 2760.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of a countervailing duty order. The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.  Countervailable Subsidy Overview

A countervailable subsidy exists when a foreign government provides a financial contribution to a specific industry that confers a benefit upon a recipient within the industry.  19 U.S.C. § 1677(5); see also Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir. 2014).  A countervailable benefit shall normally be treated as conferred if goods or services are provided for less than adequate remuneration.  19 U.S.C. § 1677(5)(E)(iv); see also POSCO v. United States, 977 F.3d 1369, 1371 (Fed. Cir. 2020).  "For purposes of clause (iv), the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided . . . in the country which is subject to the investigation or review.  Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale."  19 U.S.C. § 1677(5)(E).

Commerce's regulations provide a three-tiered approach for determining the adequacy of remuneration of an investigated good or service.  See 19 C.F.R. § 351.511(a)(2).  The Tier 1 and Tier 2 analyses compare the government price to a market-based price for the good or service in the country in question, or in a world market.  Id. § 351.511(a)(2)(i), (ii).  The Tier 3 analysis provides that when both an in-country market-based price and a world market price are unavailable,

Commerce examines whether the government price is consistent with market principles. Id. § 351.511(a)(2)(iii). Commerce makes this determination based on "information from the foreign government about how it sets its price." Fine Furniture (Shanghai) Ltd., 748 F.3d at 1370. "[I]f Commerce determines that government pricing is not consistent with market principles, then 'a benefit shall normally be treated as conferred.'" POSCO, 977 F.3d at 1372 (quoting 19 U.S.C. § 1677(5)(E)(iv)); see also Nucor Corp. v. United States, 927 F.3d 1243 (Fed. Cir. 2019) (discussing Commerce's application of the three-tier methodology).

## II. Nucor's Allegations and Commerce's Determination

Nucor challenges as unsupported by substantial evidence and not in accordance with the law Commerce's determination that the Government of Korea's provision of electricity for less than adequate remuneration did not confer a benefit. Compl. at 8.

### A. Whether Commerce's Determination was in Accordance with the Law

Nucor argues that Commerce's determination was unlawful because Commerce disregarded the government price to respondents and purportedly should have determined whether a benefit was conferred to a specific respondent individually, not in the aggregate. See Pl.'s Br. at 12–24. Nucor asserts that 19

U.S.C. § 1677f–1(e) requires Commerce to determine whether a benefit was conferred to an *individual entity*. Id. at 12.  19 U.S.C. § 1677f-1(e)(1) states that:

> In determining countervailable subsidy rates . . . the administering authority shall determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.

19 U.S.C. § 1677f–1(e)(1).  Nucor contends that 19 U.S.C. § 1677f–1(e) requires Commerce to focus on the "prices that the respondents actually paid KEPCO for electricity" rather than KEPCO's cost by classification data reflecting KEPCO's total cost of sales and total sales income.  Pl.'s Br. at 15.

In the Final IDM, Commerce continued to determine that its Tier 3 analysis required Commerce to assess whether the electricity prices charged by KEPCO were consistent with market principles by evaluating whether the electricity prices allowed for the recovery of costs plus a rate of recovery or profit.  Final IDM at 15. Commerce explained that Commerce's analysis focused not on KEPCO's total revenue, but on KEPCO's methodology for determining the adequacy of its pricing through cost and revenue data.  Id. at 16–17.

Commerce determined that under the Tier 3 analysis: (1) KEPCO fully recovered costs and did not confer a benefit; or (2) the prices for electricity resulted in a non-measurable benefit during the period of review.  Final IDM at 15. Commerce explained:

> [O]ur [Tier 3] analysis for electricity in Korea assesses whether the electricity prices charged by KEPCO are consistent with market

> principles by evaluating the electricity prices to see if they allow for the recovery of costs, plus a rate of recovery or profit. This well-established approach has been relied upon by Commerce in many cases and upheld by the [U.S. Court of Appeals for the Federal Circuit] in both Nucor and POSCO. To the extent that we determine that the electricity prices are in line with market principles, then we determine that no benefit is conferred. . . . In the instant review, we determined that some electricity prices were in line with market principles while others were not and, as such, for those categories that did not cover costs plus a rate of recovery, we calculated a benefit amount. Furthermore, KG Dongbu and Hyundai Steel reported paying electricity prices that are listed on KEPCO's electricity rate schedule, and supporting documentation indicated that KG Dongbu and Hyundai Steel's operations were classified under the correct electricity consumption categories.

Id.

Addressing Nucor's argument that Commerce should apply a standard that directly compares the electricity prices paid by a respondent to the cost plus profit rate of KEPCO to determine whether a benefit exists, Commerce determined that:

> [O]ur analysis is not based on KEPCO's total revenue but, instead, KEPCO's methodology for determining the adequacy of its pricing through cost and revenue data. As such, our analysis only relates to financial performance to the extent income from prices charged for each electricity consumption category covers KEPCO's costs, plus profit. Because, as stated above, KG Dongbu and Hyundai Steel paid electricity prices that are charged to all companies in the corresponding electricity consumption classifications, our analysis does, in fact, account for whether the prices KG Dongbu and Hyundai Steel paid were covering KEPCO's costs.

Id. at 17. Defendant asserts that Commerce's analysis was lawful and in conformity with the U.S. Court of Appeals for the Federal Circuit's ("CAFC")

decisions in Nucor Corp. v. United States, 927 F.3d 1243 (Fed. Cir. 2019) and POSCO v. United States, 977 F.3d 1369 (Fed. Cir. 2020).  Def.'s Br. at 9–11.

The Court notes that 19 U.S.C. § 1677f-1(e)(1) refers to the requirement that Commerce determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise, which Commerce satisfied here when it determined individual countervailable subsidy rates of 0.47% for Hyundai Steel and 10.51% for KG Dongbu.  Final Results, 87 Fed. Reg. at 2760.  The language of 19 U.S.C. § 1677f–1(e)(1) does not require that Commerce focus on the prices that the respondents actually paid KEPCO for electricity, as alleged by Nucor.  Commerce explained that notwithstanding Nucor's challenge, Commerce did contemplate the prices paid by mandatory respondents Hyundai Steel and KG Dongbu when Commerce considered the prices paid by all companies, because Hyundai Steel and KG Dongbu paid the same prices that other companies paid within the corresponding electricity consumption classifications.  Final IDM at 16–17.

Nucor also contends that 19 C.F.R. § 351.503(b)(1) requires Commerce to analyze whether a benefit was conferred when an individual firm pays less for its inputs than it would otherwise pay.  Pl.'s Br. at 12.  19 C.F.R. § 351.503(b)(1) states that:

> For other government programs, [Commerce] normally will consider a benefit to be conferred where a firm pays less for its inputs (e.g., money,

> a good, or a service) than it otherwise would pay in the absence of the government program, or receives more revenues than it otherwise would earn.

19 C.F.R. § 351.503(b)(1). Nucor argues that 19 C.F.R. § 351.503(b)(1) compels Commerce to consider the price paid by "the firm" or an individual respondent. Pl.'s Br. at 12.

Commerce explained that "[w]hile Nucor appears to argue that we should disregard a market analysis of KEPCO's pricing and simply focus on the price charged to the respondents, 19 [C.F.R. §] 351.511(a)(2)(iii) necessarily requires that we evaluate whether KEPCO's pricing is consistent with market principles, which the record demonstrates." Final IDM at 17. 19 C.F.R. § 351.511(a)(2)(iii) states in relevant part:

> If there is no world market price available to purchasers in the country in question, the Secretary will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles.

19 C.F.R. § 351.511(a)(2)(iii).

As discussed above, Commerce considered the prices paid by mandatory respondents KG Dongbu and Hyundai Steel when Commerce considered the prices paid by all companies, because KG Dongbu and Hyundai Steel paid the same prices that other companies paid within the corresponding electricity consumption classifications. Moreover, Commerce's determination regarding whether the prices paid by all companies, including KG Dongbu and Hyundai Steel, were

consistent with market principles, was in conformity with the relevant statute's instruction for Commerce to determine the adequacy of remuneration in relation to prevailing market conditions, including price, quality, availability, marketability, transportation, and other conditions of purchase or sale.  19 U.S.C. § 1677(5)(E).  When conducting a Tier 3 analysis, the CAFC has held that Commerce has "considerable prima facie leeway to make a reasonable choice within the permissible range" of calculation methodologies, so long as that choice is properly justified "based on the language and policies of the countervailing-duty statute . . . and other relevant considerations."  Nucor Corp., 927 F.3d at 1255.  The Court concludes that Commerce's determination was reasonable and in accordance with the law.

### B.  Whether Commerce's Determination was Supported by Substantial Evidence

Nucor challenges as unsupported by substantial evidence Commerce's determination that the Government of Korea's provision of electricity for less than adequate remuneration did not confer a benefit.  Compl. at 8.  In order to analyze the structure of the Korean electricity market and the role that the Korean Power Exchange ("KPX") played in price setting, Commerce reviewed record documents, including questionnaire responses filed by the Government of Korea, KG Dongbu, and Hyundai Steel regarding the structure of the Korean electricity market and

operations of KEPCO. Final IDM at 15–19; Government of Korea's NSAQR; Letter from Yoon & Yang LLC to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Government of Korea's New Subsidy Allegations Supplemental Questionnaire Response (Mar. 11, 2021) ("Government of Korea's Supplemental NSAQR"), PR 140; KG Dongbu's NSAQR; Hyundai Steel's NSAQR; Letter from Yoon & Yang LLC to Sec'y Commerce, re: Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Government of Korea's New Subsidy Allegations Second Supplemental Questionnaire Response (Apr. 13, 2021) ("Government of Korea's Second Supplemental NSAQR"), PR 146.

For example, Commerce reviewed the Government of Korea's NSAQR to support Commerce's determination that KG Dongbu and Hyundai Steel reported paying electricity prices that were listed on KEPCO's electricity rate schedule and that KG Dongbu and Hyundai Steel's operations were classified under the correct electricity consumption categories. Final IDM at 15. Exhibit E-9 to the Government of Korea's NSAQR cited by Commerce is a document entitled "Electricity Tariff Schedules" and provides applicable rate schedules for various classifications of electricity, including industrial electricity rates for different voltage levels with corresponding demand charge in won/kWh and energy charge in won/kWh. Id.; Government of Korea's NSAQR at Exhibit E-9. Commerce also

cited KG Dongbu's NSAQR at Exhibits NSA-2 to NSA-3, which are documents entitled "Electricity Template" and "Electricity Bills for July 2019," and Hyundai Steel's NSAQR at Exhibits NSA-2 to NSA-3, which are documents entitled "Electricity Template" and "Electricity Bills for July 2019."  Final IDM at 15; KG Dongbu's NSAQR at Exhibits NSA-2, NSA-3.  Commerce determined based on a review of these record documents that KG Dongbu and Hyundai Steel reported paying electricity prices that were listed on KEPCO's electricity rate schedule.  Final IDM at 15.

Commerce also determined based on record evidence that KPX's standardized electricity pricing system included fixed and variable costs to ensure that the expected rate of return was suitably allocated between the independent generators along with KEPCO and the six wholly-owned subsidiary generators (GENCOs) in the KPX market.  See Final IDM at 17–18.  For example, Commerce cited the Government of Korea's NSAQR to support its determination that KEPCO was obligated to pay the GENCOs for the total cost of generating electricity, including interest on loans, even if KEPCO was not profitable.  Final IDM at 17; Government of Korea's NSAQR at 27 (stating that "if KEPCO makes profit from the sales of electricity, such profit is shared with its generators, and vice versa. KEPCO and its subsidiaries enjoy the profits and share the risks because KEPCO wholly owns its six subsidiaries, and KEPCO needs to have its subsidiaries operate

stably. Nevertheless, KEPCO is obligated to pay its subsidiaries the total cost . . . regardless of whether KEPCO has made profits or not").

Commerce determined based on record evidence such as the Government of Korea's Supplemental NSAQR that the Government of Korea provided a detailed explanation and supporting documentation of how KEPCO's profit rate was calculated and how it was based on KEPCO's operations. Final IDM at 18 (citing the Government of Korea's Second Supplemental NSAQR at 7–8) (providing answers to questions detailing how the rate of return was calculated)). Commerce also determined based on record evidence that the prices paid by KG Dongbu and Hyundai Steel were those set by KEPCO's electricity rate schedules. Id. at 19 (citing the Government of Korea's NSAQR at Exhibit E-9) (providing rate schedules for electricity)).

The Court notes that Nucor alleges that "overwhelming record evidence to the contrary" shows that Commerce's determination is not supported by substantial evidence, but Nucor fails to provide evidence substantiating this claim. Pl.'s Br. at 22. Mere allegations are insufficient to raise doubts as to the veracity of the evidence upon which Commerce relied in making its determination. Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 13, 15, 704 F. Supp 1114, 1117 (1989) (holding that "[s]peculation is not support for a finding").

The Court concludes that Commerce's determination is supported by substantial evidence because Commerce cited record documents, including the questionnaire responses of the Government of Korea, KG Dongbu, and Hyundai Steel, showing that the respondents did not receive a measurable benefit and "KG Dongbu and Hyundai Steel paid electricity prices that are charged to all companies in the corresponding electricity consumption classifications[.]"  Final IDM at 17; see POSCO, 977 F.3d at 1374 ("If the rate charged is consistent with the standard pricing mechanism and the company under investigation is, in all other respects, essentially treated no differently than other companies and industries which purchase comparable amounts of electricity, then there is no benefit.").

## CONCLUSION

The Court holds that Commerce's determination that the Government of Korea does not subsidize the Korean steel industry through the provision of electricity for less than adequate remuneration is supported by substantial evidence and in accordance with the law.  The Court sustains the Final Results.  Judgment will issue accordingly.

                                                                  /s/ Jennifer Choe-Groves
                                                             Jennifer Choe-Groves, Judge

Dated:  April 19, 2023
       New York, New York